**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 30, 2018[*]
Decided September 17, 2018

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1420

| | |
|---|---|
| WESSLEY GUNCHICK, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 C 4256 |
| BANK OF AMERICA, N.A., | Matthew F. Kennelly, |
|     *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Wessley Gunchick participated in a defined-benefits pension plan that Bank of America Corporation now administers. He disputes the calculation of his benefits under the plan, which is governed by the Employee Retirement Income Security Act. The

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district judge determined that Bank of America's interpretation of the plan was not arbitrary and capricious and entered summary judgment for the bank. We affirm.

Gunchick worked as a loan officer for LaSalle Bank. That bank typically paid him a biweekly draw and a monthly commission, but sometimes he received no draw "due to outstanding shortage." His pension plan calculates the monthly benefit as a function of (1) the average of his compensation in his last three and five years of employment and (2) his credited years of employment. The plan defines "compensation" as "the basic wages or salary paid to an Employee or Participant … excluding bonuses, overtime, commissions, or any other form of extra compensation …." The plan does not define "basic wages" or "salary." Regarding credited service, it says that an eligible employee "shall become a Participant [in the plan] on the earlier of the January 1 or the July 1 next following his Date of Employment."

As usual, we review the entry of summary judgment de novo. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 671 (7th Cir. 2018). If, as in this case, the plan grants discretionary authority to the administrator to interpret it, then we, like the district court, apply the "arbitrary and capricious" standard when reviewing an interpretation challenged under 29 U.S.C. § 1132(a)(1)(B). *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Dragu*s, 882 F.3d at 672.

After Gunchick's employment with LaSalle Bank ended, the administrator of the pension plan (Bank of America's predecessor) informed him that his monthly pension would be $257. As Bank of America later explained, Gunchick's three-year and five-year compensation averages were based on only his annual draws ($20,000 and $25,000, respectively), *not* his commissions ($53,000 in 2003). And he was credited with 8.833 years of service: January 1, 1995 (the January 1 following his August 1994 start date) through October 31, 2003. The latter decision is consistent with the express and statutorily permissible terms of the plan, *see* 29 USC § 1052(a)(1), (4), so we will say no more about it.

Gunchick contested the amount of his pension income through Bank of America's claim review process. He argued that his commissions were "wages" and should have counted toward his pension, but Bank of America's examiner affirmed the original calculation. After exhausting the plan's grievance procedures, Gunchick brought this suit. *See* 29 U.S.C. § 1132(a)(1)(B).

The district judge entered summary judgment for Bank of America. He considered Gunchick's argument that in his case, commissions *were* his wages, because his monthly draw was simply an advance which he was required to pay back upon receiving his commission. He concluded, however, that "compensation" as defined in the plan excludes "commissions," so Bank of America reasonably considered only Gunchick's monthly draws when determining his pension.

Gunchick's appellate brief is not a model of clarity, but we do not agree with the bank's assertion that the appeal must be dismissed under Federal Rule of Appellate Procedure 28(a). We can discern an argument that the legal authorities on which the district court relied did not resolve his argument and entitle the bank to summary judgment. He again asserts that his draw was an advance on his commissions, so combined they were his "wage" and should have been factored together into the pension calculation.

The bank responds that if Gunchick is right that all of his "compensation" is based on his commissions, then he is owed no pension at all. But we have rejected that very position before; an ERISA pension plan cannot promise an illusory benefit. *See Hess v. Hartford Life and Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001). Thus, the bank cannot meet Gunchick's argument simply by saying it could have given him nothing—especially because it did pay Gunchick *something*. *See id*. (explaining that if plan owed nothing, then administrator "would have had no business" paying claimant anything because "plan administrators cannot randomly pay benefits to individuals not entitled to them").

Also questionable under *Hess* is the bank's contention that it could calculate the amount of the benefit owed with reference to only the plan documents. The plan does not define Gunchick's "basic wage" or explain the nature of his draw. We know that the draw was not guaranteed income because he did not receive it for two months "due to outstanding shortage." We might infer from Gunchick's brief that a "shortage" is a failure to earn enough commission those months to pay back the draw, but without the employment contract, we cannot be sure. Indeed, in *Hess* we said that the employment contract was the "best evidence" of an employee's compensation structure. 274 F.3d at 463.

But Gunchick's case is distinguishable from *Hess*. In *Hess*, although the employment contract was not in the administrative record, the claimant communicated its terms to the benefits examiner and apparently tried to submit it for the examiner's review, and the employer "stipulated that it calculated [the contractual "base salary"]

by averaging the employee's total commissions over the previous two years." 274 F.3d at 459–60, 462. Under those circumstances, we said that it was arbitrary and capricious not to consider the contract's terms. *Id.* at 463. Here, however, Gunchick never submitted his employment contract to the examiner or, as far as we know, referenced its terms. And, unlike the claimant in *Hess*, Gunchick does not directly challenge the adequacy of the administrative record (though he did in the district court after Bank of America refused to produce his employment file). Without the contract or an agreement about its terms, there is no evidence supporting Gunchick's description of his compensation structure. Therefore, we cannot say that Bank of America's interpretation of the plan to exclude Gunchick's commissions, but not the draw, from the pension calculation was "arbitrary and capricious." *Rabinak v. United Bhd. of Carpenters Pension Fund*, 832 F.3d 750, 754 (7th Cir. 2016).

Because Gunchick's claim fails on the merits, we need not consider whether his suit is barred by the ten-year statute of limitations. And we also do not address his argument that Judge Kennelly was biased against him, because that argument is frivolous.

AFFIRMED